CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

OCT 25 2023

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| HERMAN LIPFORD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:23cv00015 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| EASTMAN CHEMICAL COMPANY, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Herman Lipford has brought suit against his former employer, Eastman Chemical Company (Eastman). His complaint asserts employment-related claims of race-based discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et. seq.*, disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and retaliation and interference under the Family and Medical Leave Act (FMLA) 29 U.S.C. § 2601 *et seq*. The complaint also asserts claims under Virginia's Human Rights Act (VHRA), Virginia Code Ann. § 2.2-3900 *et seq.*, and a *Bowman* claim under Virginia law.[1] (*See generally* Compl., Dkt. No. 1.)

Pending before the court is Eastman's partial motion to dismiss (Dkt. No. 9), in which it asks the court to dismiss Lipford's *Bowman* claim, set forth in Count VII. For the reasons set forth herein, that motion will be granted.

I. BACKGROUND

Lipford, who is African American, began working for Eastman in its Martinsville,

---

[1] In *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va.1985), the Supreme Court of Virginia recognized a tort claim of wrongful termination in violation of Virginia public policy, describing it as a limited exception to Virginia's employment-at-will doctrine.

Virginia location in 2012. He held the position of Lead Operator when he was terminated in May 2022. (Compl. ¶¶ 7, 8, 11, 12.)

In February 2020, Lipford's daughter died in a car accident. (*Id.* ¶ 37.) Lipford experienced incredible grief and unbearable depression in the months that followed, and he began self-medicating with alcohol and also sought counseling. (*Id.* ¶¶ 38, 40–42.) He continued to work. In early 2022, Lipford was "finally beginning to heal from the loss of his child" when his son was arrested in Charlotte, North Carolina, on April 16, 2022. (*Id.* ¶¶ 43–44.) Lipford immediately notified his supervisor, Terry Setliff, and told him he would be unable to work that day; Setliff approved the absence. (*Id.* ¶¶ 45–46.)

In the days after that, which included his son's subsequent arrest for events that allegedly occurred a year before, Lipford twice posted bond for his son and brought him back to Martinsville. (*Id.* ¶¶ 46–48.) The charges were all ultimately dismissed, but these events "further compounded" Lipford's stress. (*Id.* ¶ 49.)

On April 23, Lipford returned to work, trying to put aside recent events and his stress. (*Id.* ¶ 50.) He worked approximately two and a half hours before realizing he was not mentally fit to complete his shift. (*Id.* ¶ 51.) At that point, he called Eastman's hotline and spoke to Hannah Hammonds, a registered nurse. (*Id.* ¶ 52.) He advised Hammonds that he was "stressed out to the max" with thoughts of his children and did not believe he could complete his shift. (*Id.* ¶ 53.) When Hammonds asked if he felt like hurting himself, Lipford responded that "he did not feel like hurting himself, but also didn't want to hurt anyone else." (*Id.* ¶ 54.)

Hammonds placed Lipford on FMLA leave and instructed him to check out from work. She told him she would email Setliff to advise him what was happening, and she told Lipford to make a doctor's appointment. (*Id.* ¶ 55.) Lipford could not find Setliff to let him know he was

taking leave, but told his Group Lead, Neil, that "medical" had "taken him out of work." (*Id.* ¶ 56.) When Neil inquired as to why, Lipford explained that he was "stressed out to the max" and that he needed to "leave before I do something I would regret." (*Id.* ¶ 56.) Several days later, he attended a medical appointment with a family nurse practitioner, who diagnosed him with anxiety and depression and noted that he had no potential for workplace violence. (*Id.* ¶¶ 57–58.) She recommended he participate in "tele counseling" and excused him from work from April 23 to May 23. (*Id.* ¶ 58.) Eastman was made aware of the medical evaluation and report.

On April 26, Lipford participated in a Zoom counseling session with a counselor, Doug Fox, from Eastman. In addition to describing his grief and stress from the events involving his children, he also complained about Setliff, his Caucasian manager. Lipford told Fox that he believed Setliff was singling him out for unfair and discriminatory treatment and looking for a reason to get him fired. He further complained that Setliff was much more critical of Lipford and other Black employees compared to White employees. (*Id.* ¶¶ 61–62.)

Later that same day, Lipford began hearing from various co-workers that he was about to be fired because he had allegedly threatened to kill Setliff. Lipford never made any such threat and immediately texted Setliff to ask if he had actually claimed Lipford had threatened to kill him. Setliff denied knowing about the rumor, but said he had received Lipford's paperwork requesting medical leave. (*Id.* ¶¶ 66–69.)

On May 2, 2022, Lipford received an undated termination letter from Eastman's Human Resources Manager. The letter falsely reported that Lipford had "consistently exhibited a failure to adhere to our core values and our Fair Treatment policy, namely threatening your fellow co-workers." (*Id.* ¶ 71.)

II.  DISCUSSION

A.  **Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).[2]  To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014).  But a court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302.

B.  ***Bowman* Claim**

An at-will employee may bring a wrongful discharge claim under *Bowman*, in limited instances, "'if the termination violates Virginia public policy as expressed in a Virginia statute.'" *Tattrie v. CEI-Roanoke, LLC*, No. 7:23-cv-079, 2023 WL 4186383, at *4 (W.D. Va. Jun. 20, 2023) (quoting *Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 550 (E.D. Va. 2022) (citing *Bowman*, 331 S.E.2d at 801)).  Specifically, a *Bowman* claim "may be brought only under one of three circumstances: (1) 'an employer violated a policy enabling the exercise of an employee's statutorily created right;' (2) 'the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy;' or (3) 'the employee's

---

[2] Unless otherwise noted, the court omits internal citations, alterations, and quotation marks throughout this opinion.  *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

refusal to engage in a criminal act.'" *Hice*, 589 F. Supp. 3d at 550–51) (citing *Rowan v. Tractor Supply Co.*, 559 S.E. 2d 709, 710–11 (Va. 2022)). Lipford appears to be relying upon the first or second circumstance described above.

Eastman's argument for dismissal is straightforward. It first notes that plaintiff's *Bowman* claim is premised on alleged violations of the public polices set forth in the VHRA and three federal statutes—Title VII, the ADA, and the FMLA. It then contends that: (1) *Bowman* claims cannot be predicated on the VHRA because the VHRA provides a private cause of action; and (2) *Bowman* claims cannot rely on federal statutes as the source of a public policy violation. (Mem. Supp. Partial Mot. to Dismiss 1–2, Dkt. No. 10.)

As Lipford notes in his response in opposition (Dkt. No. 15), some courts prior to 1995 had allowed *Bowman* claims based on the VHRA. *See, e.g.*, *Lockhart v. Commonwealth Educ. Sys. Corp.*, 439 S.E.2d 328, 104 (Va. 1994). In 1995, however, the statute was amended to make clear that claims based on the VHRA public policies were "exclusively limited" to the actions, procedures, and remedies afforded by "applicable federal or state civil rights statutes or local ordinances." Thereafter, the Supreme Court of Virginia (SCV) and many other courts concluded that *Bowman* claims premised on the VHRA were excluded. *See Doss v. Jamco, Inc.*, 492 S.E. 2d 441, 447 (Va. 1997). But in 2020, the VHRA was revised again. Lipford focuses on the fact that, as part of this amendment, the "exclusively limited" language was removed. Based on this, he contends that *Bowman* claims are once again viable, if based on the public policies expressed in the VHRA.[3]

The court, consistent with the overwhelming weight of authority on the issue, rejects

---

[3] In the alternative, Lipford suggests that if the court is "unclear" how the Supreme Court of Virginia would decide this issues, it should certify the question to that court. (*See generally* Pl.'s Opp'n to Mot. to Dismiss, Dkt. No. 15.)

5

Lipford's argument. Critically—and as another judge of this court recently explained in rejecting the same argument—the 2020 amendments

> did not eliminate a private right of action for VHRA claims. . . . Instead, the legislature added two additional procedures [ . . . ] that provide extensive procedures mandating that a plaintiff exhaust her claims with the [Virginia Office of Civil Rights]. As it stands, therefore, the VHRA provides for an administrative scheme followed by a private right of action. *See Tattrie*, 2023 WL 4186383, at *5.
>
> As the court concluded in *Hice*, [plaintiff] "cannot work around the structure, limitations, and remedies of the VHRA by bringing a related *Bowman* claim. The VHRA prescribes an extensive remedial scheme that employees must follow when relying on the rights and policies articulated in the Act." 589 F. Supp. 3d at 553. Allowing [plaintiff's] *Bowman* claim to proceed, therefore, would undercut the VHRA's administrative process and attendant private right of action provided by the statute. At bottom, [plaintiff] cannot have it both ways; she cannot access the VHRA's private right of action, which she necessarily does in Count 2, while simultaneously using the VHRA as a statutory predicate for her *Bowman* claim.

*Hairston v. Nilit Am., Inc.*, No. 4:23-cv-00011, 2023 WL 5447370, at *8 (W.D. Va. 2023). *Accord Tattrie*, 2023 WL 4186383, at *5; *Hice*, 589 F. Supp. 3d at 553.

For the same reasons explained by the *Hairston*, *Tattrie*, and *Hice* courts, this court concludes that the VHRA, even after the 2020 amendments, cannot be the "public policy" undergirding a *Bowman* claim. Thus, to the extent Lipford attempts to base his *Bowman* claim on the VHRA, his claim must fail.

Eastman also argues—in both its opening and reply brief—that a *Bowman* claim cannot be based on a federal statute; it must be premised on a Virginia statute or policy. (Mem. Supp. Partial Mot. to Dismiss 5–7; Def.'s Reply 5, Dkt. No. 16.) It is unclear to the court whether Lipford is asserting a *Bowman* premised on the violation of a public policy expressed in any of the federal statutes. In particular, Count VII references the VHRA, but also includes references

to retaliation under the FMLA, but there is a separate retaliation claim under the FMLA. (*Compare* Compl. ¶¶ 116–24 (asserting, in Count VII, a *Bowman* claim and referring to the FMLA in paragraphs 121 and 122) *with id.* ¶¶ 95–99 (asserting, in Count IV, an FMLA retaliation claim).)

Lipford does not respond to Eastman's argument on this point, which the court construes as a lack of opposition to the argument. Regardless, Eastman is correct that a *Bowman* claim cannot be premised on a federal statute. *See McCarthy v. Texas Instruments, Inc.*, 999 F. Supp. 823, 829 (E.D. Va. 1998) ("Title VII, a federal statute, does not provide an expression of Virginia's public policy. A *Bowman* claim must find root in a *state* statute.") (emphasis in original). (*See also* Mem. Supp. Partial Mot. to Dismiss 5–6 (collecting authority for same).)

### III.  CONCLUSION

For the foregoing reasons, Lipford's complaint fails to state a claim for which relief can be granted in Count VII. Thus, the court will grant Eastman's partial motion to dismiss and dismiss Count VII.

An appropriate order will be entered.

Entered: October 25, 2023.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District JudgeIN THE